In re SIERRA PACIFIC
BROADCASTERS,
Debtor.

INDUSTRIAL COMMISSION OF
ARIZONA, Appellant,

v.

Alan R. SOLOT, Chapter 11 Trustee;
Edward P. Bolding, Appellees.

BAP No. AZ–94–2510–RMAs.
Bankruptcy No. 88–0543–TUC–LO.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted July 21, 1995.

Decided Aug. 10, 1995.

Lawrence D. Hirsch, Phoenix, AZ, for appellant Industrial Com'n of Arizona.

Scott D. Gibson, Tucson, AZ, for appellee Alan R. Solot.

Before RUSSELL, ASHLAND and McMANUS,[1] Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

This appeal arises from the denial of an application for an administrative expense priority pursuant to § 503(b)(1)[2] for a claim arising from a postpetition industrial accident and a postpetition worker's compensation award. We REVERSE and REMAND.

### I.   FACTS[3]

On March 10, 1988, the debtor, Sierra Pacific Broadcasters, Ltd. ("Sierra") filed a voluntary chapter 11 petition. Sierra, as debtor in possession, operated a radio station in Arizona. In early 1990, the appellee, Alan R. Solot was appointed the chapter 11 trustee ("chapter 11 trustee").

Sometime prior to the time the chapter 11 trustee was appointed, Sierra, as debtor in possession, allowed its worker's compensation insurance to lapse. For some unknown reason, the chapter 11 trustee did not rein-

---

1. Hon. Michael S. McManus, Bankruptcy Judge for the Eastern District of California, sitting by designation.

2. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3. One day prior to oral argument, the debtor/appellee informed this Panel that the underlying bankruptcy case had been dismissed. Ordinarily, the dismissal of a bankruptcy case on appeal may render an appeal moot. *See In re Universal Farming Indus.*, 873 F.2d 1334, 1335 (9th Cir. 1989) ("When the issue being litigated directly involves the debtor's reorganization, the case is mooted by the dismissal of the bankruptcy."). However, in this case, the appeal is not moot because a remedy exists whereby, if ordered, the administrative claimant can return any distributions wrongfully received to the estate to be shared *pro rata* among other administrative claimants. *See In re Vista Del Mar Assoc., Inc.*, 181 B.R. 422, 423–24 (9th Cir. BAP 1995) (stating general rule of mootness "focusses on an [appellate] court's ability to fashion meaningful relief."); *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1351–52 (9th Cir.1994) (discussing rules of mootness).

state the worker's compensation insurance at the time of his appointment.

On January 2, 1992, Richard L. Mize ("Mize"), an employee of Sierra, was injured in an industrial accident. Since there was no insurance available to compensate Mize for his work-related injuries, the appellant, Industrial Commission of Arizona ("ICA") paid benefits to Mize pursuant to Arizona law.[4]

On July 15, 1992, ICA filed an application for payment of a $50,000 administrative claim against Sierra for reimbursement of the compensation benefits paid to Mize.

On February 2, 1994, ICA filed an amended proof of claim asserting an administrative claim of $75,000.

Although the chapter 11 trustee originally agreed to the $75,000 claim, he later filed an objection to ICA's claim. The chapter 11 trustee was joined in his objection by the Internal Revenue Service and the appellee, Edward P. Bolding, who was the sole shareholder of Sierra.

On July 26, 1994, the bankruptcy court held a hearing on ICA's application for payment of the alleged administrative expense. On October 27, 1994, the bankruptcy court denied ICA's application.

On November 2, 1994, ICA filed a motion for reconsideration. The bankruptcy court denied ICA's motion.

ICA timely filed its notice of appeal.

## II. ISSUES

A. Whether a claim for reimbursement of worker's compensation benefits is entitled to priority status as an excise tax under § 507(a).

B. Whether a claim arising from a postpetition industrial accident and postpetition reimbursement of a worker's compensation award is entitled to an administrative expense priority under § 503(b)(1)(A).

## III. STANDARD OF REVIEW

■ The BAP reviews issues of statutory interpretation as questions of law reviewed *de novo. In re Sun Runner Marine, Inc.,* 134 B.R. 4, 5 (9th Cir. BAP 1991).

■ The BAP reviews for an abuse of discretion the bankruptcy court's award or denial of administrative claims pursuant to § 503(b)(1)(A). *In re Hanna,* 168 B.R. 386, 388 (9th Cir. BAP 1994).

## IV. DISCUSSION

A. *Priority Status as an Excise Tax under § 507(a)*

■ ICA argues that its claim for reimbursement of the worker's compensation benefits paid to Mize was entitled to priority status as an excise tax pursuant to § 507(a)(7)(E).[5] We disagree.

Recently, the BAP was presented with a very similar argument involving ICA and whether its claim for reimbursement of a worker's compensation benefit was an excise tax entitled to priority status under § 507(a)(7)(E)(ii).[6] *See In re Camilli,* 182 B.R. 247 (9th Cir. BAP 1995).

In *Camilli,* the ICA asserted that its claim was nondischargeable as an excise tax. The BAP concluded that ICA's claim was not an

---

**4.** Arizona's worker's compensation statutes are codified at Ariz.Rev.Stat.Ann. §§ 23–901 to 23–1091 (West 1994). Under Arizona law, an employer who fails to procure worker's compensation insurance can be held liable to an injured worker in a legal action. Ariz.Rev.Stat.Ann. § 23–907.A. The injured worker may either file a civil action against the employer or apply for compensation benefits with the ICA. Ariz.Rev. Stat.Ann. § 23–907.B. Payments of these benefits "act as a judgment against the employer." Ariz.Rev.Stat.Ann. § 23–907.C.

**5.** We note that under the Bankruptcy Reform Act of 1994, § 507(a)(7)(E) has been redesignated as

§ 507(a)(8)(E). *See* Pub.L. No. 103–394, 108 Stat. 4106 (1994), *reprinted in,* 1994 U.S.C.C.A.N. 3340.

**6.** Section 507(a)(7)(E)(ii) provides the following expenses and claims have priority in the following order: "(7) allowed unsecured claims of governmental units, only to the extent that such claims are for— ... (E) an excise tax on— ... (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition." 11 U.S.C. § 507(a)(7)(E)(ii).

excise tax entitled to priority under § 507(a), and thus was dischargeable. *Id.* at 252.

More specifically, the BAP stated:

> The Bankruptcy Code generally does not give priority to claims resulting from injuries suffered by a debtor's employee. If a private insurer had paid [the injured worker's] claim, the debtor would have had no obligation to reimburse the insurer for the claim and the insurer's claim for any insurance premiums owed would not be given priority in bankruptcy. The payments to [the injured worker] by the ICA resulted from [the debtor's] voluntary decision not to provide insurance, and therefore the ICA's assessment should be regarded as a fee.
>
> . . . .
>
> Because in Arizona an employer may elect not to use insurance provided by the State, charges assessed by the State are in the nature of fees rather than taxes.

*Id.* at 251 (citation omitted).

The only difference between *Camilli* and the instant case is the fact that ICA's claim in *Camilli* arose prepetition. That fact alone, however, would not affect the conclusion that ICA's claim is not an excise tax entitled to priority under § 507(a)(7).[7]

Because ICA's claim is not an excise tax, we need not decide whether ICA would be entitled to an administrative expense priority pursuant to § 503(b)(1)(B)(i) (allowing administrative expense priority for taxes incurred by the estate).

### B. *Administrative Expense Priority under § 503(b)(1)(A)*

■ ICA also argues that its claim is entitled to an administrative expense priority under § 503(b)(1)(A). The chapter 11 trustee contends that ICA submitted no proof that its claim benefitted the estate.

■ Section 503(b)(1)(A) defines administrative claims to include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...." 11 U.S.C. § 503(b)(1)(A). These expenses include the liabilities that arise out of the trustee or debtor in possession's actual and necessary costs of administering the estate. *Reading Co. v. Brown,* 391 U.S. 471, 483, 88 S.Ct. 1759, 1766, 20 L.Ed.2d 751 (1968).

In *Reading,* the Supreme Court held that satisfaction of a tort liability incurred by the receiver during an arrangement proceeding under the Bankruptcy Act of 1898 would be granted administrative priority, since the liability arose within the scope of the receiver's authority.[8] The liability was thus chargeable against the estate as an actual and necessary cost of administration because it occurred postpetition.

The Supreme Court has made it clear that "[t]he plain meaning of legislation should be conclusive, except in the 'rare case [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,*

---

**7.** Because the facts of the very recently decided BAP case are so closely related to this appeal, we are bound by that decision. Of course, this is not to say that the result would have been different in this appeal had the BAP not recently decided the issue. *See Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 472 (9th Cir.1990) (O'Scannlain, J., concurring) (explaining that the goal of creating the BAP was making BAP decisions binding on all bankruptcy courts in the circuit); *In re Ball,* 185 B.R. 595 (9th Cir. BAP 1995) (stating that a Panel should not overrule a prior ruling "unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings."); *In re Windmill Farms, Inc.,* 70 B.R. 618, 622 (9th

Cir. BAP 1987), *rev'd on other grounds,* 841 F.2d 1467 (9th Cir.1988) (stating any decision not concluding that BAP decisions are binding throughout the entire circuit are in error).

**8.** Section 503(b) replaced § 64(a) of the Bankruptcy Act of 1898. The two sections are virtually identical. Section 64(a) provides that "to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate...." 11 U.S.C. § 64(a) (repealed 1978).

458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

A review of § 503(b)(1)(A) does not indicate that a claimant is required to prove that a claim *benefitted* the estate. The chapter 11 trustee relies on *In re Palau Corp.,* 18 F.3d 746 (9th Cir.1994) and *In re Dant & Russell, Inc.,* 853 F.2d 700 (9th Cir.1988) for the proposition that ICA's claim does not represent a cost or expense that benefitted the estate.

In *Palau,* an employee sought approval of an administrative priority claim arising from a backpay award which accrued postpetition to an employee who was terminated prepetition. The crucial issue focused on whether the backpay award represented services *rendered* after the commencement of the case. The Ninth Circuit concluded that the employee was not entitled to an administrative expense priority pursuant to § 503(b)(1)(A) because the claim was not for postpetition services rendered. 18 F.3d at 750–51.

In *Dant & Russell,* the Ninth Circuit stated, "[t]he statute is explicit. Any claim for administrative expenses must be the actual and necessary costs of preserving the estate for the *benefit* of its creditors." *Id.* at 706 (emphasis added). The reference to the "benefit of its creditor" is not in § 503(b)(1)(A). Rather than requiring an actual benefit to the estate, the language only requires that the conduct involved in attempting to preserve the estate must be for the "benefit" of the estate as opposed to the benefit of some other entity. For example, postpetition expenses which benefitted a third party would not be entitled to an administrative expense. *See e.g. In re Leedy Mortgage Co., Inc.,* 111 B.R. 488, 493 (Bankr. E.D.Pa.1990) (stating that the cost incurred to benefit the claimants' own interest is not entitled to administrative priority).

In *Dant & Russell,* the issue involved a claim for an administrative expense priority by the debtor's lessor for environmental cleanup costs on property which had been leased by the debtor. The lease was rejected by the debtor in possession shortly after bankruptcy pursuant to § 365(g). Since the effect of rejection under § 365(g) is to treat the breach of an unexpired lease as occurring prepetition, the Ninth Circuit concluded that the damages also occurred prepetition. Thus, the claim was not entitled to an administrative expense priority. The Ninth Circuit did note, however, that the result would be different if the contaminated property were property of the estate. 853 F.2d at 709. In that case, the claimant would have been entitled to an administrative expense priority.

This case differs from *Palau* and *Dant & Russell* in that the injury and the claim both arose *postpetition.* For example, Mize's injury occurred postpetition as well as the compensation benefits paid on Sierra's behalf to Mize.

We disagree with the chapter 11 trustee's assertion that *Reading* only involves cases where the trustee engages in tortious conduct. Clearly, the estate is liable for any actual and necessary costs of administration arising from postpetition claims of worker's compensation benefits arising from postpetition injuries. *See Reading,* 391 U.S. at 482, 88 S.Ct. at 1765 (stating that it was natural and just that those injured by the operation of a business during arrangement recover ahead of those creditors for whose benefits the business is continued).

## V. CONCLUSION

The ICA's claim is not entitled to priority status under § 507(a) because it is not an excise tax. Because the claim was an actual and necessary cost of administration the bankruptcy court abused its discretion in denying ICA's claim as an administrative expense priority pursuant to § 503(b)(1)(A).

Accordingly, we REVERSE and RE-MAND for the bankruptcy court to enter an order allowing the claim as an administrative expense.