Patricia BUSHAY, Debtor.

Patricia Bushay, Plaintiff/Appellant,

v.

Marie McDonnell d/b/a The Mortgage Counselor, Defendant/Appellee.

BAP No. MW 05–009.
Bankruptcy No. 02–47207–HJB.
Adversary No. 03–4292.

United States Bankruptcy Appellate Panel for the First Circuit.

July 27, 2005.

David G. Baker, Peter C. Lacy, on brief for Plaintiff/Appellant.

Marie McDonnell, pro se, Defendant/Appellee.

Before LAMOUTTE, DEASY and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

This appeal arises from the bankruptcy court's judgment dismissing the debtor's adversary complaint against the appellee, Marie McDonnell, for failure to comply with the court's discovery order. For the reasons set forth below, the Panel **AFFIRMS.**

## BACKGROUND

On November 29, 2002, the debtor, Patricia Bushay (the "Debtor"), filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. On October 9, 2003, the Debtor filed an adversary complaint against Marie McDonnell d/b/a The Mortgage Counselor ("McDonnell") alleging, *inter alia*, breach of contract, fraud and violations of Mass. Gen. Laws ch. 93A ("Chapter 93A"). The Debtor's complaint alleges, *inter alia*, that McDonnell misled the Debtor about her ability to stop a foreclosure sale of the Debtor's home.

### A. The Discovery Dispute

McDonnell sent the Debtor a Request for Production of Documents on June 30, 2004, and propounded Interrogatories on July 28, 2004. The Debtor did not respond to the discovery requests. On August 6th, McDonnell's counsel deposed the

Debtor pursuant to a subpoena *duces tecum*, which asked for the same documents identified in the Request for Production of Documents. The Debtor appeared at the deposition with limited objections to the Requests and without any of the requested documents. By letter dated August 24, 2004, McDonnell's counsel again asked the Debtor's attorney to produce the requested documents and requested clarification of the Debtor's objections. There was no response to that letter. On October 5th, McDonnell's counsel faxed the Debtor's attorney, asking for a response to her August 24th letter and for answers to Interrogatories. The Debtor's counsel simply referred the matter to his replacement on October 20th. McDonnell's counsel claims that she then called the Debtor's new attorney about a discovery conference under the local rules. The response was a fax from the Debtor's new attorney saying that he was "tied up." On October 25th, McDonnell's counsel made another request for a discovery conference. Debtor's counsel did not respond. On November 8, 2004, McDonnell's counsel called the Debtor's lawyer and was told again that he was tied up and would return counsel's call that day. The call was not returned.

McDonnell filed a Motion to Compel Discovery on October 27, 2004, alleging that she had received no answers to Interrogatories and insufficient production of documents. The Debtor opposed the motion, arguing, *inter alia* that the Debtor was not obligated to respond to the Interrogatories since McDonnell had already conducted a lengthy deposition covering the same material, and that the Debtor was not required to produce documents that were of public record. After a hearing on November 29, 2004, the bankruptcy court issued an order requiring the Debtor to comply with the outstanding discovery requests by December 3, 2004 ("Discovery Order"). The bankruptcy court also

warned the Debtor's counsel that "[i]f the Debtor does not comply by December 3rd, ... it would be a fair assumption on my part that [the Debtor] is not interested in prosecuting this case." According to McDonnell, although the Debtor faxed Interrogatory answers on December 3rd, there was a problem with the transmittal and those answers were incomplete. McDonnell did not receive the original answers (which were also incomplete) until December 6th. Similarly, McDonnell claims that the Debtor's production of documents, which were not received until December 6th, was inadequate.

On December 8, 2005, five days before trial, McDonnell filed an Omnibus Motion to Dismiss, For Entry of Summary Judgment and For Costs, Fees and Sanctions ("Omnibus Motion"). In the motion, McDonnell sought dismissal of certain counts of the complaint, summary judgment as to other counts, and costs, fees and sanctions. McDonnell argued, among other things, that the Debtor had failed to establish any causes of action against her, noting the Debtor's legally insufficient demand letter for purposes of Chapter 93A, the Debtor's failure to plead her fraud claim with particularity, and the Debtor's failure to plead her specific damages. The Debtor opposed the Omnibus Motion.

### B. The Dismissal Order

At trial on December 13, 2004, the bankruptcy court first considered McDonnell's Omnibus Motion. After hearing arguments from both parties, the bankruptcy court stated: "The motion to dismiss is denied. The import of the [Chapter] 93A letter is taken under advisement .... and the motion for summary judgment is denied because there's no affidavit." Then, before commencing the trial, the bankruptcy court questioned counsel about statements in McDonnell's Omnibus Motion re-

garding the inadequacy of the Debtor's discovery responses. The Debtor's counsel protested to this line of questioning, arguing that the discovery compliance issues were not properly before the bankruptcy court and that he had received no notice that the discovery issue would be addressed at trial. After hearing from the parties, the bankruptcy court stated as follows:

> McDonnell has a right, has a right to know what specific acts are being complained of, and McDonnell's counsel has an obligation to demand that they be specifically set forth before trial. We're on the date of trial. The request was made for that information some time ago.... The plaintiff didn't answer. I ordered the plaintiff to do so. I ordered her to do so by December 3rd. She chose not to, and as far as I'm concerned, she chose to terminate her suit. Inasmuch as my order of November 29 was not complied with, the adversary proceeding is dismissed.

Accordingly, the bankruptcy court issued an order dismissing the adversary proceeding ("Dismissal Order"). The bankruptcy court also issued an order denying as moot McDonnell's Omnibus Motion, presumably because the adversary proceeding had been dismissed.

### C. Motions for Reconsideration and Show Cause Order

The Debtor filed motions seeking reconsideration of each of the December 13th orders, on the grounds, *inter alia*, that the Debtor was not afforded timely and/or meaningful notice of the possibility of a dismissal sanction. McDonnell opposed both motions. On January 21, 2005, the bankruptcy court issued an Order to Show Cause ("Show Cause Order") providing:

> It is hereby ORDERED that the [Debtor] show cause, at the aforesaid hearing on February 17, 2005 at 2:00 p.m. in

Springfield, why, if the Court should determine that notice of the possibility of a dismissal sanction was insufficient on December 13, 2004, the case should not now be dismissed on account of Plaintiff's alleged failure to comply with this Court's order of November 29, 2004. The Court will take evidence at the hearing, if necessary.

After an evidentiary hearing on February 18, 2005, the bankruptcy court issued orders denying each of the motions for reconsideration. The bankruptcy court also issued an order reaffirming its Dismissal Order. On March 2, 2005, the Debtor filed a Notice of Appeal seeking review of each of these orders.

### JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). The bankruptcy court's order dismissing the adversary proceeding is a final appealable order.

## STANDARD OF REVIEW

 We evaluate the bankruptcy court's findings of fact pursuant to the "clearly erroneous" standard of review and its conclusions of law *de novo.* *Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 30 (1st Cir.1994); *see also* Fed. R. Bankr.P. 8013; *Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997). We can reverse the bankruptcy court's dismissal of this proceeding for failure to comply with a discovery order only if it was a clear abuse of discretion. *See Top Entm't Inc. v. Ortega,* 285 F.3d 115, 117 (1st Cir.2002); *Damiani v. Rhode Island Hosp.,* 704 F.2d 12, 17 (1st Cir.1983). The choice and severity of the sanction imposed is a matter reserved to the sanctioning court's discretion as it is far better situated to evaluate the evidence presented and to apply the appropriate legal standards. *See Whitney Bros. Co. v. Sprafkin,* 60 F.3d 8, 12 (1st Cir. 1995). " '[T]he question is not whether we would have imposed a more lenient penalty had we been sitting in the bankruptcy judge's place, but whether the court abused its discretion in imposing the sanction it did.' " *Top Entm't,* 285 F.3d at 119 (quoting *Spiller v. U.S.V. Lab., Inc.,* 842 F.2d 535 (1st Cir.1988)). A trial court abuses its discretion in sanctioning a party "when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper or no improper factors are assessed, but the court makes a serious mistake in weighing them." *Velez–Cortez v. Awning Windows, Inc.,* 375 F.3d 35, 42 (1st Cir.2004) (quoting *Indep. Oil Chem. Workers of Quincy v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988)).

## DISCUSSION

### I. Due Process.

 Bankruptcy courts have broad authority to impose sanctions in discovery matters. Although there is no per se requirement, notice and opportunity to be heard are desirable when sanctions are imposed and the sanction must comport with procedural due process requirements. *See Media Duplication Servs., Ltd. v. HDG Software, Inc.,* 928 F.2d 1228, 1238 (1st Cir.1991). The Debtor argues that because McDonnell's Omnibus Motion did not specifically request dismissal based on the Debtor's failure to comply with the Discovery Order, she had no notice that the alleged discovery violations would be raised at the December 13th trial and the bankruptcy court's "sua sponte dismissal of the adversary proceeding violated due process." There are several factors which undermine the Debtor's due process argument.

First, the Debtor's history of dilatoriness in this case culminated in a hearing and the issuance of the Discovery Order only two weeks prior to trial. Consequently, the Debtor should have known that her failure to comply with that Discovery Order would be addressed at trial. At the outset of this adversary proceeding, the Debtor failed to produce anything in response to McDonnell's Request for Production of Documents until the Debtor was deposed, which was well past the production deadline. The documents she did produce were incomplete, compelling McDonnell to make repeated requests for further production and for answers to Interrogatories. The Debtor still failed to respond. McDonnell was then forced to file a motion to compel discovery. At a hearing on the Motion to Compel, the bankruptcy court ordered the Debtor to comply with the discovery requests, and specifically warned the Debtor's counsel that if the Debtor failed to comply by December 3rd, the court would assume that the Debtor "is not interested in prosecuting this case." This hearing took place only two weeks prior to

the December 13th trial. Thus, the Debtor was duly warned of the consequences of failing to comply with the discovery order, and the trial court was well within its discretion to dismiss the case even when the defendant did not specifically request the dismissal in her Omnibus Motion. *Serra–Lugo v. Consortium–Las Marias,* 271 F.3d 5, 6 (1st Cir.2001). Therefore, the Debtor should have known that failure to fully comply with the Discovery Order could result in dismissal of the adversary proceeding.

Second, McDonnell's moving papers and the issues scheduled for trial on December 13th gave the Debtor adequate notice that the matter of her continued discovery failure could be heard that day. Even if the Debtor thought she had complied with the Discovery Order, she admits that McDonnell's Omnibus Motion "did suggest·that the Debtor's responses [to the discovery requests] were inadequate." Yet, despite knowing that McDonnell was still claiming discovery violations only five days prior to trial, the Debtor and her counsel failed to take any steps to inquire about the missing discovery responses or to otherwise ensure compliance with the Discovery Order.

■■■■ Third, the discovery requests pertained to evidence essential to the heart of the Debtor's case. Both the Chapter 93A and fraud counts in the Debtor's complaint require a specific enumeration of the alleged deceptions and injuries, the very information requested in the outstanding discovery requests. For example, the Debtor alleges that McDonnell violated Chapter 93A by falsely representing that she could forestall a foreclosure sale of the Debtor's home. Chapter 93A, § 9, which protects consumers from the unfair or deceptive practices of a person in any trade or commerce, requires the claimant to send a written demand letter reasonably describing the unfair and deceptive act or practice relied upon and the injury suffered.[1] *See* Mass. Gen. Laws Ann. ch. 93A, § 9. A demand letter is a jurisdictional prerequisite to suit under chapter 93A. *See Spring v. Geriatric Auth. of Holyoke,* 394 Mass. 274, 475 N.E.2d 727 (1985); *see also Entrialgo v. Twin City Dodge, Inc.,* 368 Mass. 812, 333 N.E.2d 202, 204 (1975). In order to qualify as a written demand under Chapter 93A, the letter must define the injury suffered and the relief sought, and refer to the nature of the claim as one under the consumer protection act. *See id.* Accordingly, a claimant who fails to send any demand letter or who sends a legally insufficient demand letter will be denied recovery. The Debtor failed to provide adequate responses to any discovery requests regarding the basis of the Debtor's Chapter 93A claim.

■■■■ Similarly, a claim for damages for fraud requires proof that (1) the defendant made a misrepresentation of fact; (2) it was made with the intention to induce another to act upon it; (3) it was made with the knowledge of its untruth; (4) it was intended that it be acted upon, and that it was in fact acted upon; and (5) damage directly resulted therefrom. *See Graphic Arts Finishers, Inc. v. Boston Redev. Authy.,* 357 Mass. 40, 255 N.E.2d 793 (1970). Pursuant to Mass. R. Civ. P. 9(b), all averments of fraud must be "stated with particularity." The Debtor failed to provide adequate responses to any discovery requests regarding the basis of the Debtor's fraud count against McDonnell.

1. The purpose of the demand letter is to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct, and to operate as a control on the amount of damages which the complainant can ultimately recover. *See Entrialgo v. Twin City Dodge, Inc.,* 368 Mass. 812, 333 N.E.2d 202, 204 (1975).

In her Omnibus Motion, McDonnell argued that the Debtor had failed to specifically enumerate the alleged deceptions and injuries at the heart of her Chapter 93A and fraud counts, the very information requested in the outstanding discovery requests. Therefore, the Debtor knew or should have known that her failure to adequately respond to those requests would be raised as an issue at trial.

Finally, it is important to note that the bankruptcy court issued an order requiring the Debtor to show cause at the February 18th hearing on the motions for reconsideration why, if the bankruptcy court determined that notice of the possibility of a dismissal sanction was insufficient at the December 13th trial, the case should not subsequently be dismissed on account of the Debtor's continued failure to comply with the Discovery Order. Any surprise asserted by the Debtor about dismissal as a sanction for the Debtor's discovery violations was mooted by the Show Cause Order.

For the reasons set forth above, the bankruptcy court's dismissal of the adversary proceeding for failure to comply with the Discovery Order did not deprive the Debtor of her due process rights.

## II. Scope of Sanctions

Rule 37(b)(2)(C) [2] and 37(d) of the Federal Rules of Civil Procedure, made· applicable to this proceeding by Bankruptcy Rule 7037, provide that a trial court may order sanctions against a party for failure to comply with discovery, including discovery orders and deposition schedules. Sanctions under Rule 37(b) are appropriate once it is established that a party has ·failed to comply with a valid discovery order. *See Anderson v. Beatrice Foods Co.,* 900 F.2d 388 (1st Cir.1990). When contemplating sanctions under Rule 37(b), a court should consider two primary variables: (1) the facts of the case; and (2) the court's purpose in imposing the penalty. *Id.* at 394. Trial courts "should consider the purpose to be achieved by a given sanction and then craft a sanction adequate to serve that purpose." *Id.* at 395; *see also National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) ("[D]ismissal of a complaint under Rule 37 is warranted when failure to comply arises from 'fault,' 'bad faith' or 'willfulness' rather than 'inability'"). In this case, the bankruptcy court was justified in sanctioning the Debtor based on her failure to comply with the Discovery Order. The issue is whether the bankruptcy court was justified in imposing the ultimate sanction of dismissal of the Debtor's complaint.

The Debtor argues that even if sanctions were warranted, dismissal was too severe a penalty and a lesser sanction would have been appropriate. Generally, a single instance of prohibited conduct cannot be a basis for dismissal if the conduct was not particularly egregious or extreme. "[D]ismissal should not be viewed either as

---

**2.** Rule 37(b) provides, in pertinent part:
 (b) Failure to Comply with Order.
 . . .
 (2) Sanctions by Court in Which Action is Pending. If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . .
 (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or *dismissing the action or proceeding or any part thereof,* . . . .
 Fed.R.Civ.P. 37(b) (emphasis added).

a sanction of first resort or as an automatic penalty for every failure to abide by a court order." *Bachier–Ortiz v. Colon–Mendoza*, 331 F.3d 193, 194–95 (1st Cir. 2003) (citation omitted); *Velazquez–Rivera v. Sea–Land Service, Inc.*, 920 F.2d 1072, 1076 (1st Cir.1990). However, it is well settled in the First Circuit that a trial judge does not need to exhaust milder sanctions before resorting to dismissal when a noncompliant litigant has disregarded court orders and been suitably forewarned. *See, e.g., Top Entm't*, 285 F.3d at 119; *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 649 (1st Cir.1990) (finding that court need not consider lesser sanctions where a party is "guilty not only of simple delay but of disobedience of a court order as well"); *Farm Constr. Servs., Inc. v. Fudge*, 831 F.2d 18, 20 (1st Cir.1987) (holding that a court need not consider less severe sanctions before turning to the sanction of dismissal); *Damiani*, 704 F.2d at 15 ("There is nothing in the rule that states or suggests that the sanction of dismissal can be used only after all the other sanctions have been considered or tried"); *but see Crossman v. Raytheon Long Term Disability Plan*, 316 F.3d 36 (1st Cir.2002) (vacating dismissal order due to district court's failure to consider alternative sanctions).[3]

■ In determining whether a party's conduct warrants the harsh sanction of dismissal, the court must consider all of the circumstances involved. *See Tower Ventures, Inc. v. City of Westfield*, 296

F.3d 43, 46 (1st Cir.2002) (choice of an appropriate sanction must be handled on case-by-case basis). Although dismissal ordinarily should be employed only when a plaintiff's misconduct is extreme, disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal). *See id.* Accordingly, numerous decisions in this circuit have imposed substantive sanctions, such as dismissal of an action, for failure to obey discovery orders of the court. *See, e.g., Spiller*, 842 F.2d at 537 (affirming dismissal of wrongful discharge action as sanction for failure to comply with discovery orders); *Farm Constr. Servs.*, 831 F.2d at 18; *Damiani*, 704 F.2d at 12 (affirming dismissal of antitrust suit as sanction for failure to comply with discovery order).

■ There are several factors which weighed in favor of dismissal as a sanction for the Debtor's failure to comply with the Discovery Order. First, dismissal in this case was based on a pattern of delay and willful behavior on the part of the Debtor. Over the course of six months, the Debtor refused to cooperate with the discovery process. She willfully disregarded discovery deadlines and rules and openly ignored an order of the bankruptcy court. The record reflects that at no time during this six-month process did the Debtor file any motions for extensions of time to comply, affidavits or other evidence providing an explanation for her inability to comply, nor did she file objections detailing the grounds for her objections.[4] In addition,

**3.** In *Crossman*, the plaintiff appealed from the district court's dismissal of her complaint due to her counsel's failure to appear for the initial scheduling conference. On appeal, the First Circuit Court of Appeals reversed, concluding that the district court had abused its discretion in imposing such a harsh sanction for a single instance of prohibited conduct without any consideration of alternative sanctions. *Crossman* is distinguishable from the

present case where there was a pattern of delay and willful behavior on the part of the Debtor.

**4.** The objections contained in the Debtor's original discovery responses did not detail the grounds for the objections and the Debtor's counsel failed to respond to McDonnell's request for clarification of those objections.

the Debtor's cavalier attitude towards this case is evidenced by her counsel's failure to respond to McDonnell's repeated requests for a discovery conference, and failure to respond to letters and telephone calls from McDonnell's counsel regarding the discovery dispute.

At the November 29th hearing on the Motion to Compel Discovery, the Debtor's counsel made a feeble attempt to provide excuses for the Debtor's lack of compliance, arguing that the Debtor was not be obligated to respond to Interrogatories since McDonnell had already conducted a lengthy deposition of the Debtor, and that the Debtor should not be obligated to produce documents that are of public record. However, the bankruptcy court concluded that the Debtor's excuses were meritless and issued the Discovery Order. The Debtor still failed to comply. As the First Circuit has stated, where the record is replete with "foot dragging," as in this case, "it is difficult to draw any other inference but that the plaintiff did not intend to comply unless absolutely forced to do so." *Spiller*, 842 F.2d at 537.

The Debtor also argues that the sanction of dismissal was too harsh as the sanction "was not tailored to remedy prejudice to the defendant." However, it is clear that McDonnell was prejudiced by the Debtor's failure to comply with the discovery requests. As noted above, the outstanding discovery requests pertained to evidence essential to the heart of the Debtor's case. The fraud and Chapter 93A counts in the Debtor's complaint require a specific enumeration of the alleged deceptions and injuries, the very information requested in the outstanding discovery requests. Yet, after more than six months and repeated requests for information, McDonnell still does not know what the claims are against her. The Debtor's failure to respond to discovery has preju-

diced McDonnell by impeding her ability to prepare a full and effective trial strategy. Further, the Debtor's repeated failure to respond to discovery has prejudiced McDonnell by causing her to expend significant time and money seeking compliance with the discovery requests.

In addition, there is substantial evidence that alternative sanctions, such as additional warnings or reprimands, would have been ineffective. At the hearing on the Motion to Compel, the bankruptcy court warned the Debtor's counsel that her failure to comply with the discovery requests could result in dismissal of her bankruptcy case, yet she chose to ignore those warnings. Moreover, assessing fines, costs or attorneys' fees against the Debtor would have been ineffective as the Debtor was unlikely to be able to afford any substantial financial penalty.

### *CONCLUSION*

For the reasons set forth above, we conclude that the bankruptcy court did not abuse its discretion in resorting to the ultimate sanction of dismissal. Accordingly, the bankruptcy court's judgment dismissing the Debtor's adversary complaint against the Appellee, Marie McDonnell, for failure to comply with the court's discovery order is **AFFIRMED.**